Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Dec 05 2013, 9:58 am

*[signature]*

**CLERK**
of the supreme court, court of appeals and tax court

APPELLANT PRO SE:

**DARRYL L. ABRON**
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARRYL L. ABRON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1301-PC-56 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Clark Rogers, Judge
Cause No. 49G22-0805-FC-116813

**December 5, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Darryl Abron appeals the denial of petition for post-conviction relief. We affirm.

## Issues

Abron raises three issues, which we restate as:

 I. whether the post-conviction court properly determined that he did not receive ineffective assistance of trial counsel;

 II. whether the post-conviction court properly determined that his guilty plea was knowing, intelligent, and voluntary; and

 III. whether the post-conviction court properly determined that the jury trial issue was waived.

## Facts

In 2008, Abron was charged with Class C felony burglary, Class A misdemeanor resisting law enforcement, and Class A misdemeanor criminal mischief. Abron was also alleged to be an habitual offender. Attorney Dan Mohler was appointed to represent Abron.

Shortly before the scheduled jury trial, the State offered Abron a plea arrangement in which he would plead guilty to the burglary charge and the habitual offender enhancement with a minimum sentence of six years and a maximum sentence of twelve years. After Mohler and Abron discussed the offer, Abron did not accept it, and the offer expired.

On September 29, 2008, after a jury was selected, Abron had a panic attack and was transported to the hospital, and the trial was continued until the next day. In the

meantime, Abron and the State entered into a written plea agreement that called for Abron to plead guilty to the burglary and resisting law enforcement charges and to being an habitual offender. In exchange, the criminal mischief charge would be dismissed, and the executed sentence would be capped at twelve years.

When the trial reconvened on September 30, 2008, Abron refused to plead guilty to being an habitual offender. Abron then indicated he wanted to abandon the plea agreement, plead guilty as charged to the burglary, resisting law enforcement, and criminal mischief charges, and have a jury trial on the habitual offender enhancement. Abron explained that Mohler suggested this strategy before his panic attack the day before. In response, Mohler explained that that advice was given before the current plea offer was made. Mohler then advised Abron to take the plea agreement because "[t]hings have changed" and it "is a totally different situation" than when he was advising Abron the day before. Trial Tr. p. 43. Abron rejected this advice and again indicated he wanted to plead guilty to the pending charges and have a jury decide the habitual offender enhancement. Mohler and Abron discussed the situation, and Mohler stated, "Things have changed since my advice to you last time. . . . My previous advice has changed because of an intervening situation." Id. at 45-46.

Mohler then informed the trial court and Abron that the decision to plead guilty was Abron's alone, that he was disassociating himself from Abron's decision to plead guilty or proceed to a jury trial, and that he was not saying anything else until Abron made a final decision. Mohler then apparently walked away from the defense table but remained in the courtroom while Abron pled guilty to the pending charges.

3

Mohler then represented Abron during the jury trial on the habitual offender allegation and objected to the use of the prior convictions on cruel and unusual punishment and double jeopardy grounds. The objection was overruled, and Abron was found to be an habitual offender. The trial court sentenced Abron to eight years on the burglary charge, which was enhanced by twelve years for being an habitual offender, and to one year on each of the misdemeanor charges, for a total sentence of twenty-two years.

Abron filed a direct appeal arguing that his convictions for burglary and criminal mischief violated double jeopardy principles and that his sentence was not proportionate to the nature of the crime. A panel of this court dismissed his appeal as it related to his convictions and affirmed his sentence. See Abron v. State, No. 49A02-0811-CR-986 (Ind. Ct. App. July 30, 2009).

In 2010, Abron filed a pro se petition for post-conviction relief, which he amended in 2012. Following a hearing, at which Mohler and Abron testified, the post-conviction court denied Abron's petition. Abron now appeals.

**Analysis**

A petitioner in a post-conviction proceeding bears the burden of proof, and an unsuccessful petitioner appeals from a negative judgment. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009). A petitioner appealing from a negative judgment must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. Id. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. Id.

4

## I. Ineffective Assistance of Counsel

Abron claims that he received ineffective assistance of counsel. "To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance." McCullough v. State, 987 N.E.2d 1173, 1176 (Ind. Ct. App. 2013) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), trans. denied. The failure to satisfy either prong will cause the claim to fail. Id. "Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms." Id. To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.

### A. Counsel's Advice Regarding Habitual Offender Enhancement

Abron asserts that Mohler incorrectly advised him that the State could not use the prior felony convictions to support the habitual offender enhancement because those same convictions had already been used to support a previous habitual offender enhancement. Abron claims that Mohler's advice regarding the use of the convictions informed his decision to reject the plea agreement and plead guilty to the pending charges and to have a jury trial on the habitual offender enhancement.

The record does not establish that Abron was misadvised by Mohler. It is clear from the transcript of the trial proceedings that Mohler's advice to plead guilty to the pending charges and proceed to a jury trial on the habitual offender enhancement was

5

given when there was no plea offer from the State. Mohler explained that the situation changed in light of the plea offer and advised Abron to accept the offer.

At the post-conviction hearing, Mohler testified that he had come across this issue before in his representation of another client and learned that the State could use the same convictions it had already used to support a previous habitual offender enhancement. Mohler testified that, although the higher courts had already ruled on the issue, he intended to challenge the use of the same underlying felony convictions. This is consistent with Mohler's objection to the use of the prior convictions on cruel and unusual punishment and double jeopardy grounds during the habitual offender trial. This was a reasonable strategy in the absence of a plea offer.

The post-conviction court concluded:

> The fact that Petitioner ultimately set out on a course that led to a longer prison sentence (22 years, instead of the capped 12-year offer that Mr. Mohler had advised him to take) cannot be blamed on Mr. Mohler, who, in the Court's opinion, did everything that he could lawfully and properly do to advise Petitioner, who, to his detriment, thought he could do better for himself. As stated above, the Court does not find that Petitioner's mistaken belief about the State's ability to prove the habitual offender charge can be attributed to Mr. Mohler.

App. p. 41. Based on our review of the post-conviction relief hearing testimony and the transcript of the underlying proceedings, Abron has not established that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.

### B. Abandonment

6

When Abron rejected the plea agreement and decided to plead guilty to the pending charges, the relationship between Abron and Mohler became very strained and Mohler walked away from the defense table but remained in the courtroom while the trial court accepted Abron's guilty plea and a factual basis was established. Abron claims that, by walking away from the table, Mohler abandoned him during a critical stage in the proceeding.

Abron has not established that Mohler's representation fell below an objective standard of reasonableness because Mohler did not abandon Abron during the guilty plea proceedings. Mohler testified at the post-conviction relief hearing that, when he met with Abron at the jail, Abron agreed to accept the plea agreement but, when they arrived at court, Abron changed his mind. Mohler testified that he and Abron were not on the same page the day of the plea and that he explained to Abron that he could not make the decision whether to plead guilty for Abron. Mohler then physically removed himself from sitting next to Abron to try to show him that the decision regarding the plea was his.

On this issue, the post-conviction court found that, by creating space, Mohler most likely reduced tension levels to a point where Abron could more effectively make his decision and that the transcript revealed "that the continual dithering by Petitioner, his constant vacillations and apparent refusal to hear what was being told to him put all parties and the Court in a tense and frustrating situation." App. p. 40. The post-conviction court concluded that, at that point, Abron had been fully advised by Mohler, that Abron was fully and accurately advised by the trial court about the plea, and that Mohler did not cease to act as Abron's attorney simply because he momentarily walked

7

away from the table when Abron was "making it difficult, if not impossible for Mr. Mohler to perform his duties." Id. at 41. The evidence as a whole does not lead unerringly and unmistakably to the opposite conclusion.

### C. Failure to Object

Abron argues that he received ineffective assistance of counsel because Mohler failed to object to the trial court's convening of a jury to determine Abron's habitual offender status. According to Abron, the habitual offender status should have been determined by the trial court pursuant to Indiana Code Section 35-50-2-8(f), which provides, "If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing. If the trial was to the court or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing under IC 35-38-1-3."

The transcript of the trial proceedings clearly shows that Abron requested a jury trial on his habitual offender status. It is well-settled that a defendant may not request a trial court to take an action and later claim on appeal that such action is erroneous. Baugh v. State, 933 N.E.2d 1277, 1280 (Ind. 2010). Under the invited error doctrine, Abron may not take advantage of any error that was created by his request for a jury trial on the habitual offender allegation. See id.

Nevertheless, on this issue, the post-conviction court concluded that Abron "fails to show any prejudice from being permitted, albeit erroneously under state statute, to exercise his constitutionally guaranteed right to a jury trial. And he fails to show any

8

likelihood of a different result had the evidence been presented to the judge alone." App. p. 43.

In an attempt to circumvent the prejudice prong of an ineffective assistance of counsel claim, Abron claims that the resulting jury trial amounted to fundamental error and, therefore, prejudice is presumed. The cases Abron cites do not support this proposition. In fact, Benefield v. State, 945 N.E.2d 791, 804 (Ind. Ct. App. 2011), trans. denied, upon which Abron relies, explains that fundamental error and prejudice for ineffective assistance of trial counsel claims are different questions. Ineffective assistance prejudice is based on a reasonable probability of a different result, while fundamental error occurs only when the error is so prejudicial that a fair trial is rendered impossible. Id. Thus, our review is limited to whether Abron has established a reasonable probability that the result of the habitual offender trial would have been different had it been decided by the trial court. He has not. The post-conviction court properly rejected this claim.

## II. *Knowing, Intelligent, and Voluntary Plea*

Abron claims that the post-conviction court failed to address his claim that, because of the ineffective assistance of counsel, his guilty plea was not knowing, intelligent, and voluntary. To the contrary, the post-conviction court specifically found that Abron's "decision to plead guilty as he did was made knowingly, intelligently and voluntary as it pertains to Mr. Mohler's performance as defense counsel." App. p. 41. The post-conviction court also found, based on the evidence presented at the hearing, that there is "no reason to believe that the state of Petitioner's mental health had an effect on

his decision to reject a more favorable plea." Id. at 41-42. Thus, Abron's contention that the post-conviction court failed to address this issue is not supported by the record.

Further, the record does not support Abron's assertion that Mohler ultimately advised him to reject the State's offer, plead guilty to the pending charges, and have a jury trial on the habitual offender status. During the trial proceedings, Mohler clearly and repeatedly advised Abron to accept the plea agreement and explained that his earlier advice was no longer relevant in light of the plea offer. Thus, Abron has not established that counsel's advice rendered his guilty plea unknowing or unintelligent.

As for Abron's claim that Mohler knew Abron suffered from mental issues, which rendered Abron "unstable and unable to make important and intelligent decision[s]," the record does not support this claim. Appellant's Br. p. 17. Although Abron had a panic attack on the first day of the trial court proceedings, there is no indication that his guilty plea to the pending charges was unknowing, unintelligent, or involuntary. Mohler testified that, although Abron was agitated and angry and "coming off the effects of drug addiction," he believed Abron "had sufficient mental capacity to be able to make decisions such as pleading guilty." Tr. p. 28. Mohler explained that, had he felt Abron did not have that capacity, he would have filed a motion for a competency evaluation. Mohler also believed that the judge accepting Abron's guilty plea would confirm that he was acting voluntarily. In light of this evidence, Abron has not shown that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.

### III. Waiver

10

Abron alleged that the trial court erred in allowing a jury to determine his habitual offender status after he pled guilty to the pending charges. The post-conviction court held that this issue is waived because it was available at the time of Abron's direct appeal and not raised. Abron argues that the post-conviction court erred because a defendant who pleads guilty may not challenge the plea by direct appeal and must seek relief through post-conviction remedies. See Tumulty v. State, 666 N.E.2d 394, 395 (Ind. 1996). As Tumulty explained, "the plea as a legal act brings to a close the dispute between the parties, much as settling civil parties do by submitting an agreed judgment. To permit appeal by settling parties would, of course, make settlements difficult to achieve in any litigation." Id.

Although Abron is generally correct, he did not plead guilty to the habitual offender status. Instead, a jury found him to be an habitual offender. Thus, the reasoning in Tumulty does not apply here. As such, an impropriety in conducting a jury trial, as opposed to a bench trial, to determine Abron's habitual offender status was a free-standing issue available for direct appeal. Because this issue was not raised on direct appeal, the post-conviction court correctly determined that it is waived. See Timberlake v. State, 753 N.E.2d 591, 597-98 (Ind. 2001) ("[M]ost free-standing claims of error are not available in a postconviction proceeding because of the doctrines of waiver and res judicata."), cert. denied.

## Conclusion

Abron has not established that he received ineffective assistance of trial counsel, that his guilty plea was unknowing, unintelligent, or involuntary, or that the jury trial issue was available for post-conviction relief proceedings. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.